IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **THOMAS D. ROGERS** | ) | **CASE NO.**  2:15-cv-01736-DCN |
| **and VICTORIA A. ROGERS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **COMPLAINT AND DEMAND** |
| **v.** | ) | **FOR JURY TRIAL** |
| | ) | |
| **UNITEDHEALTH GROUP, INC.;** | ) | |
| **UNITED HEALTHCARE** | ) | |
| **SERVICES, INC.; and** | ) | |
| **UNITEDHEALTHCARE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

COME NOW Plaintiffs, Thomas D. Rogers (the plan participant who is referred to individually herein as "Plaintiff") and Victoria A. Rogers, who bring this action for damages against Defendants, UnitedHealth Group, Inc.; United Healthcare Services, Inc.; and UnitedHealthCare, Inc. (hereinafter referred to collectively as "Defendants" or "United"), by and through undersigned counsel, who allege and state the following:

## PARTIES

1.      At all pertinent times, Plaintiffs were adult citizens and residents of Mount Pleasant in the State of South Carolina, which is located within the district of the United States District Court for the District of South Carolina.

2.      Defendant UnitedHealthcare, Inc., is a wholly-owned subsidiary of Defendant United HealthCare Services, Inc., which, in turn, is a wholly-owned subsidiary of Defendant UnitedHealth Group, Inc.  UnitedHealthcare, Inc., is organized and exists under the laws of the State of Delaware with its principal place of business in the State of Minnesota.  Both United HealthCare Services, Inc.,

and UnitedHealth Group, Inc., are organized and exist under the laws of the State of Minnesota with their principal places of business in the State of Minnesota.

3.       Defendants regularly conduct business within the State of South Carolina and derive substantial revenues from employer-sponsored health plans provided within the State of South Carolina.  At all times material hereto, Defendants were engaged in the business of providing employer-sponsored health insurance throughout the State of South Carolina and within the Charleston Division of the District of South Carolina.

## JURISDICTION AND VENUE

4.       This action arises under §502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a).

5.       This Court has federal question jurisdiction under 29 U.S.C. §1132(e) and 28 U.S.C. §1331.

6.       This Court also has jurisdiction pursuant to 28 U.S.C. §1332 as full diversity of citizenship exists among the parties.  Furthermore, the amount in controversy is in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

7.       Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within the District of South Carolina.

## FACTS

8.       Plaintiff Thomas D. Rogers entered into a contract for health care coverage with United under the "Group Plan" with the Group Number "GA9R9008BW."  A copy of the Group Plan is attached hereto as Exhibit A.

9.       Pursuant to the terms of the Group Plan, Plaintiff Thomas D. Rogers enrolled in the Group Plan and consistently paid premium amounts not covered by his employer through automated

2

payroll deductions.

10.    Plaintiff Thomas D. Rogers has suffered from kidney disease for much of his adult life, enduring numerous occasions of symptom flare-ups, which have often required medical intervention on both acute and chronic levels.

11.    In early 2014, Mr. Rogers' nephrologist initiated a new drug therapy for the treatment of Plaintiff's nephritis.  The new treatment was implemented due to a lack of efficacy witnessed with Plaintiff's previous treatment methods.

12.    Unfortunately, the new drug therapy caused Plaintiff to develop side effects so severe that he became weak to the point of being unable to even sit up, was unable to perform daily activities, and ultimately developed signs of an infection.  On or about May 23, 2014, Plaintiff was taken by ambulance to Roper Saint Francis Hospital in Charleston, South Carolina, and he was diagnosed with septicemia on or about May 28, 2014.

13.    Due to the severity of Plaintiff's septicemia, Plaintiff did not immediately respond to treatment and faced life-threatening complications and a considerable amount of medical intervention, including the placement of a central venous catheter ("CVC") and multiple dialysis treatments.

14.    Plaintiff spent two weeks in the hospital, in and out of consciousness due to the treatments and medications that he was enduring.  After two weeks, his physicians agreed that his condition had stabilized enough to leave the hospital.  However, rather than return home, Plaintiff was encouraged to move to a rehabilitation facility to continue his treatment, given the critical nature of his condition and the ongoing need for multiple dialysis treatments each week.

15.    Plaintiffs, in accordance with the terms of the Group Plan, sought pre-approval from United for coverage of Mr. Rogers' rehabilitative care at a local rehabilitation center.  United refused

to cover charges for the first facility proposed by Plaintiffs.

16.     In fact, United opined that Mr. Rogers was not in need of admission into a rehabilitation facility at all – despite the fact that, at the time of his hospital discharge, Mr. Rogers could not negotiate stairs, needed mobility assistance, he was still receiving constant medication via a CVC, and he was recovering from severe septicemia with an already-compromised immune system (a fact that would put him at tremendous risk should he have to travel multiple times each week to an outpatient dialysis center, making him susceptible to unnecessary exposure to germs and injury).

17.     Despite the challenges facing Mr. Rogers, United suggested that Plaintiff could receive care at his home.  Yet, home health care would have meant that Mr. Rogers, who could barely even stand, would be required to navigate the numerous stairs in his home and would still need to be transported for dialysis treatments every few days.  The risks of injuring himself in his already weak state or, worse, of developing another life-threatening infection were simply too great to make home health a viable option.

18.     With this in mind, Plaintiffs sought pre-approval, yet again, from United for an alternate rehabilitation facility, Vibra, that offered dialysis on-site and was recommended by many of Plaintiff's treating physicians.  Despite United's conclusions that Plaintiff could receive the care he needed at home, Plaintiff's physicians agreed that an acute inpatient care facility was the best option to prevent possible fatal complications for Mr. Rogers.

19.     Once again, United refused to approve payment for Plaintiff's admission to Vibra for his continued care and treatment, nor did United proffer other facilities that it would consider as a covered facility.  Ultimately, Plaintiff Thomas D. Rogers, along with his spouse Victoria A. Rogers, made the decision to seek the necessary, physician-recommended care for Mr. Rogers, despite United's anticipated denial of the claim.

4

20.    Since Plaintiff's discharge from the hospital was imminent, a decision had to be made regarding his follow-up care. Plaintiff Thomas D. Rogers was admitted to Vibra for approximately one week from June 10, 2014, until June 17, 2014. The cost of his treatment at Vibra totaled $11,795.00, which included daily room and board, medications, and on-site dialysis treatments as prescribed by his physicians.

21.    On June 10, 2014, United informed Plaintiff Thomas D. Rogers of the results of its peer-to-peer review of the decision by Plaintiff's physician to refer Plaintiff to Vibra. *See* Exhibit B (United Letter to Plaintiff dated June 10, 2014). United informed Plaintiff that its reviewing physician had determined that Plaintiff's admission to Vibra was not medically necessary and, therefore, refused to pay any claims from this provider.

22.    As a result of United's refusal to pay for Plaintiff Thomas D. Rogers' care at Vibra, Plaintiffs had no choice but to pay the $24,164.65 bill themselves. Thankfully, Plaintiffs were able to negotiate a lower rate with the Vibra facility and were refunded $12,369.65 three months after Plaintiff's discharge, making the total bill paid by Plaintiffs $11,795.00.

23.    As Exhibit B indicates, United provided Plaintiff with the option to request the information that United reviewed to make its decision regarding Plaintiff Thomas D. Rogers' coverage, including "copies of all documents, records, health benefit plan provisions, internal rules, guidelines and protocols and any other relevant information" relied upon in making its determination. *See* Exhibit B, page 2.

24.    Plaintiff Thomas D. Rogers provided a written request, along with the requisite signed release, to United on July 22, 2014, for all information and documents relied upon by United in making its decision that Plaintiff's admission at Vibra was not medically necessary. *See* Exhibit C (Plaintiff Letter to United dated July 22, 2014).

25.     United failed to respond to Plaintiff's request.  Therefore, on September 25, 2014, undersigned counsel, on behalf of Plaintiff Thomas D. Rogers, again requested the documents relied upon by United in determining that Plaintiff's admission to Vibra was not medically necessary.  *See* Exhibit D (H. Blair Hahn Letter to United dated September 25, 2014).

26.     The only response received to date from United was a cryptic fax (*See* Exhibit E) sent on September 29, 2014, stating that a fax received by United did not include an ORS/Secondary barcode sheet, a detail neither explained in the cryptic fax nor required pursuant to the June 10, 2014, letter setting forth the necessary steps for requesting details of the denial of coverage.

27.     As a result of United's refusal to cooperate with Plaintiff's inquiry regarding the denial of his claim and provide the critical information concerning United's denial of said claim, it became evident that Plaintiffs' only hope of resolving the issue at hand was to appeal to this Court for a legal remedy.

28.     As set forth in the allegations below, Plaintiffs are entitled to actual and punitive damages as Plaintiff Thomas D. Rogers' care at Vibra was, indeed, medically necessary and, therefore, covered under the terms and scope of the Group Plan.

### FIRST CLAIM: VIOLATION OF ERISA, 29 U.S.C. §1132(a)(1)(B)

29.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

30.     The relevant section of ERISA provides that a "participant or beneficiary" of an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §1132(a)(1)(B).

31.     Plaintiff Thomas D. Rogers is now, and was at all times, a participant of United's Group Plan and is thus entitled to bring a civil action under ERISA, 29 U.S.C. §1132(a)(1)(B), to recover benefits and enforce his rights under the policy with United.

32.     The provisions at issue concerning coverage of inpatient rehabilitation facility services are part of an employee benefit plan governed by ERISA.

33.     Under the terms of the Group Plan, Defendant is obligated to provide coverage for Plaintiff's stay at an inpatient rehabilitation facility, namely Vibra, because the conditions set forth concerning coverage in the Group Plan have been satisfied:

- The admission to the facility was a cost effective alternative to an inpatient stay at a hospital; and

- Plaintiff received skilled care services that were not primarily custodial care (Specifically, the care was delivered and/or supervised by licensed technical or professional medical personnel in order to obtain a specified medical outcome and provide for the safety of the patient; the care was ordered by a physician; the care was not delivered solely for the purpose of assisting with daily living activities; the care required clinical training in order to be delivered safely and effectively.)

*See* Exhibit A, page 20.  Furthermore, as previously detailed, Plaintiff sought prior approval for his stay at Vibra, and the services provided to Plaintiff by Vibra *were*, in fact, "medically necessary" in accordance with the terms of the Group Plan.  *Id*. at pages 10, 58 and 64.

34.     An objective review of Plaintiff's treatment at Vibra would show that any finding by United that Plaintiff's inpatient treatment received at Vibra was *not* medically necessary is biased and self-serving – a complete dereliction of United's contractual obligations for the sole purpose of retaining profits to the detriment of Plaintiffs.

7

35.     Any reasonable person would agree that Plaintiff's treatment at Vibra was, in fact, medically necessary, given that it included, but was not limited to, dialysis treatments, medications administered through his CVC and otherwise administered, physical and occupational therapy, and medical care provided by licensed physicians and other medical personnel.

36.     United's failure to provide Mr. Rogers with the benefits required under his plan and to enforce the rights due to him under the terms of his plan violated ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), and caused Plaintiffs damages in the form of, but not limited to, medical bills incurred, as well as other damages alleged herein.

**SECOND CLAIM: INJUNCTIVE RELIEF UNDER ERISA 29 U.S.C. §1132(a)(3)**

37.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

38.     Mr. Rogers is a participant of the Group Plan and is thus entitled to bring a civil action under ERISA, 29 U.S.C. §1132(a)(3), to enjoin any act or practice by United that violates ERISA or the terms of the Group Plan, or to obtain other equitable relief to redress such violations or to enforce any ERISA provision or the terms of the Group Plan.

39.     Mr. Rogers is entitled to receive benefits for his treatment at Vibra under the terms of his policy with United, and those benefits have been denied.

40.     As such, Plaintiff is entitled to injunctive relief because United has violated the provisions of ERISA, and the specific enforcement of those provisions is necessary to achieve the purposes of the statute.

41.     Plaintiffs respectfully request this Court enter an Order enjoining United from denying its obligations under the Group Plan and requiring United to take all actions to comply with its duties and obligations under the Group Plan, including, but not limited to, reimbursing Plaintiffs

for payment of the charges incurred at Vibra for medically necessary treatment for Plaintiff Thomas D. Rogers' kidney failure and enjoining United from denying essentially identical claims in the future.

## **THIRD CLAIM: BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §1109**

42.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

43.    United, as a fiduciary under the Group Plan, owed a fiduciary duty to Plaintiff Thomas D. Rogers to act "solely in the interest of the [Group Plan] participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries…and defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A).  United breached its fiduciary duty to Plaintiffs by failing to act in Mr. Rogers' best interest, and instead, acted solely in its own financial interest to the detriment of Plaintiffs.

44.    United deprived Plaintiff of the benefits to which he is eligible under the Group Plan and knowingly concealed its self-serving reasons for doing so – to the point of dodging Plaintiff's repeated inquiries for information relied upon in United's peer-to-peer review of the decision that Plaintiff's treatment at Vibra was not medically necessary.

45.    Despite having knowledge of its breach of fiduciary duties to Plaintiff, United has made no effort to correct or remedy this breach.

46.    As a result of United's breach of its fiduciary duty, Plaintiffs incurred damages including, but not limited to, medical bills that they were required to pay, despite the fact that the claim should have been covered under the terms of the Group Plan.

## FOURTH CLAIM: BREACH OF CONTRACT

47.    Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

48.    Plaintiffs entered into a contract with Defendant UnitedHealthcare, Inc., on April 1, 2014, when the employer-sponsored health plan took effect, and Plaintiffs were covered under the terms of the Group Plan.

49.    At all relevant time periods, Plaintiffs satisfied their contractual obligations under the Group Plan by enrolling in the plan, paying their contributions in a timely fashion, seeking prior authorization for applicable health services, paying copayment and/or coinsurance when required, paying the costs of properly-excluded services, presenting their health identification cards when seeking health services, and ensuring that claims were accurately filed. *See* Exhibit A, pages 5-6.

50.    Despite Plaintiffs' satisfaction of their contractual obligations, United breached the terms of the Group Plan contract by refusing to cover Plaintiff Thomas D. Rogers' stay at Vibra, an inpatient rehabilitation facility, despite the fact that the conditions set forth concerning such coverage in the Group Plan contract were satisfied: the admission to the facility was a cost effective alternative to an inpatient stay at a hospital; Plaintiff received skilled care services that were not primarily custodial care; Plaintiff sought prior approval for his stay at Vibra; and the services provided to Plaintiff by Vibra were "medically necessary" pursuant to the terms of the Group Plan.

51.    United's breach of its contractual obligations resulted in damages to Plaintiffs in the form of medical bills incurred, along with other damages alleged herein.

10

## FIFTH CLAIM: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

53.     In the event that this Court determines that the Group Plan is not governed by ERISA, Plaintiffs request that this Court find that United breached the Group Plan terms in bad faith. Under South Carolina law, all contracts carry an implied term that the parties to the contract will act in good faith. Defendants' health insurance policy, as set forth in the Group Plan, carried and continues to carry such duty.

54.     It is clear that the treatment received by Plaintiff Thomas D. Rogers from Vibra was medically necessary and, as a result, should have been covered by the Group Plan contract with United. United's denial of coverage for the services provided to Plaintiff by Vibra constituted a refusal to pay a legitimate insurance claim under the terms of the Group Plan.

55.     Furthermore, United, by its bad faith actions and its denial of Plaintiff's legitimate insurance claim, has compelled Plaintiffs to institute this suit to recover the amount reasonably due or payable with respect to Plaintiff Thomas D. Rogers' claim, thereby causing Plaintiff to incur attorneys' fees and costs in order to recover the amount reasonably due or payable to Plaintiff.

56.     Therefore, United's refusal to provide coverage of Plaintiff's care at Vibra constitutes a bad faith breach of the terms of the Group Plan, as well as a breach of the implied covenant of good faith and fair dealing. Defendants' actions as set forth herein caused damages, including, but not limited to, pecuniary damages to Plaintiffs.

## SIXTH CLAIM: NEGLIGENCE

57.     Upon entering into the Group Plan contract with Plaintiffs, United assumed a duty of

11

reasonable care to Plaintiff Thomas D. Rogers (as the Group Plan participant) and his wife, Plaintiff

Victoria A. Rogers (as the Group Plan beneficiary), to uphold the terms of the Group Plan and

provide the coverage of services contracted for by Plaintiffs, in exchange for their consideration in

the form of premiums paid.

58.    United breached its duty of reasonable care to Plaintiff Thomas D. Rogers in that it

negligently declined coverage to Plaintiff that was afforded him by the terms of the Group Plan,

specifically coverage of a claim arising from medically necessary treatment provided to Plaintiff by

Vibra, an inpatient rehabilitation facility.

59.    Plaintiffs' damages alleged herein were and are the direct and proximate result of the

carelessness and negligence of Defendant in discharging its contractual obligations to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following:

(a)    That the Court enter judgment against Defendants and grant Plaintiffs compensatory

damages in the form of the full amount of all bills incurred by Plaintiffs associated

with Plaintiff Thomas D. Rogers' treatment at the inpatient facility Vibra;

(b)    Any applicable interests and penalties necessary to fully compensate Plaintiff;

(c)    Prejudgment interest on the damages awarded;

(d)    That the Court enter an Order enjoining United from denying its duties and

obligations to Plaintiff Thomas D. Rogers under the Group Plan and requiring United

to take all actions to comply with its duties and obligations under the Group Plan;

(e)    That the Court enjoin any future act or practice of United that violates the terms of

the Group Plan as to Plaintiffs;

(f)      That the Court require Defendants to reimburse Plaintiffs for reasonable attorneys'

fees and costs incurred in this action pursuant to 29 U.S.C. §1132(g);

(g)      That the Court award Plaintiffs punitive damages in light of United's wilful and

wanton breach of its contractual duties to the detriment of Plaintiffs and in an attempt

to deceive Plaintiffs as to its true, self-serving motivations; and

(h)      Any further relief in law and equity deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and as to all issues as permitted by the law.


Respectfully submitted,


By:    **/s/ H. Blair Hahn   _____**

H. BLAIR HAHN (Fed. I.D. #5717)
bhahn@rpwb.com
**Richardson, Patrick, Westbrook & Brickman, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Telephone: (843) 727-6500
Facsimile: (843) 216-6509

ATTORNEY FOR PLAINTIFFS


April 21, 2015