# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| THOMAS D. ROGERS and VICTORIA A. ROGERS, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:15-cv-01736-DCN |
| vs. | ) ) ) | **ORDER** |
| UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.; and UNITED HEALTHCARE, INC., | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter comes before the court on defendants UnitedHealth Group, Inc., United Healthcare Services, Inc., and United Healthcare, Inc.'s (collectively "United") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the court grants in part and denies in part United's motion.

## I.  BACKGROUND

Plaintiff Thomas D. Rogers ("Tom") entered into a contract for health care coverage ("Group Plan") with United[1] as part of his employment with Richardson, Patrick, Westbrook, and Brickman LLC. Compl. ¶ 8; Id. Ex. A. Tom has suffered from kidney disease for much of his adult life. Id. ¶ 10. In early 2014, Tom's doctor recommended a new drug therapy to treat his nephritis. Id. ¶ 11. Tom experienced complications from the new treatment and developed an infection. Id. ¶ 12. On May 23,

---

[1] Defendant United Healthcare, Inc. is a wholly-owned subsidiary of defendant United Healthcare Services, Inc., which in turn is a wholly-owned subsidiary of defendant UnitedHealth Group, Inc. United Healthcare, Inc. is organized and exists under the laws of the State of Delaware with its principal place of business in Minnesota. United Healthcare Services, Inc. and UnitedHealth Group, Inc. are organized and exist under the laws of Minnesota with their principal places of business in Minnesota. Compl. ¶ 2.

2014, Tom was admitted to the hospital where he was diagnosed with septicemia on May 28, 2014. Id.  After spending two weeks in the hospital, Tom's physicians "encouraged [him] to move to a rehabilitation facility to continue his treatment, given the critical nature of his condition and the ongoing need for multiple dialysis treatments each week." Id. ¶ 14.

In accordance with the terms of the Group Plan, Tom sought pre-approval from United for coverage of his rehabilitative care. Id. ¶ 15.  United denied Tom's request for coverage, believing he could receive in-home treatment. Id. ¶ 16.  At the time, Tom "could not negotiate stairs, needed mobility assistance, [] was still receiving constant medication . . . and [] was recovering from severe septicemia with an already-compromised immune system." Id.  Tom again sought pre-approval for coverage at an alternate rehabilitation facility called Vibra. Id. ¶ 18.  United rejected Tom's second request. Id. ¶ 19.  Tom's physicians "agreed that an acute inpatient care facility was the best option to prevent possible fatal complications." Id. ¶ 18.  Tom decided to receive rehabilitative treatment at Vibra for approximately one week from June 10, 2014 until June 17, 2014. Id. ¶ 20.

On June 10, 2014, the first day of Tom's stay at Vibra, United notified Tom by letter of the results of its peer-to-peer review of Tom's physician's decision to refer him to Vibra. Id. ¶ 21; Compl. Ex. B.  United's reviewing physician determined that it was not medically necessary for Tom to be admitted to Vibra and therefore refused to pay any claims from that provider. Id. ¶ 21.  The original bill for the care Tom received from Vibra was $24,164.65, but Tom negotiated a lower rate three months after his discharge. Id. ¶ 22.  Tom paid Vibra a total of $11,795.00. Id.

In its letter notifying Tom of the results of the peer-to-peer review, United gave Tom the opportunity to request the information United reviewed in making its decision regarding coverage, including "copies of all documents, records, health benefit plan provisions, internal rules, guidelines and protocols and any other relevant information" relied upon in making its decision. Id. ¶ 23; Ex. B, at 2. Tom sent both a written request for all information and documents relied upon and the requisite signed release to United on July 22, 2014. Compl. Ex. C. Tom claims that United failed to respond to his request. Compl. ¶ 25. Tom's attorney sent a second written request for the documents on September 25, 2014. Compl. Ex. D. Tom claims that the only response he received from United was a "cryptic fax" sent on September 29, 2014 "stating that a fax received by United did not include an ORS/Secondary barcode sheet, a detail neither explained in the cryptic fax nor requested pursuant to the June 10, 2014, letter setting forth the necessary steps for requesting details of the denial of coverage." Compl. ¶ 26.

Tom and plaintiff Victoria A. Rogers ("Ms. Rogers") (collectively "the Rogers") filed the present action on April 21, 2015. The Rogers bring the following claims: (1) Employee Retirement Income Security Act ("ERISA") violation pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) injunctive relief under ERISA pursuant to 29 U.S.C. § 1132(a)(3); (3) breach of fiduciary duty pursuant to 29 U.S.C. § 1109; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; and (6) negligence. United filed a motion to dismiss on June 5, 2015. The Rogers filed a response in opposition to United's motion on June 22, 2015. United filed a reply on July 2, 2015. The motion to dismiss has been fully briefed and is now ripe for the court's review.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. A complaint must contain sufficient factual allegations in addition to legal conclusions. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

## III.   DISCUSSION

United requests that the court dismiss all six claims, making the following four arguments in its motion:  (1) the Rogers' state law claims must be dismissed because they are preempted by ERISA; (2) the Rogers failed to state a claim for breach of fiduciary duty under 29 U.S.C. § 1109; (3) Tom failed to exhaust his administrative remedies; and

(4) Ms. Rogers must be dismissed as a party because she does not have constitutional standing to bring ERISA claims.  The court will address each argument in turn.

### A.     Preemption

United first argues that the Rogers' fourth, fifth, and sixth state law causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence, respectively, must be dismissed because they are preempted by ERISA.  United argues that because ERISA provides the exclusive remedy for claims related to employee benefit plans and preempts state law claims to the extent they duplicate, supplant, or supplement the relief afforded by ERISA, the Rogers' state law claims must be dismissed.  Defs.' Mot. 3.  In response, the Rogers, citing recent Supreme Court and Fourth Circuit precedent, argue that "[a]lthough the presumption is that state law claims are preempted by ERISA, . . . in cases such as this where [United has] outright refused to comply with the federal guidelines set forth by ERISA, equity must not reward [United's] illicit behavior with an automatic, across-the-board protection from state law causes of action."  Pls.' Resp. 10.

The Fourth Circuit has stated that "[p]reemption is fundamentally a question of congressional intent" and that "[c]ourts must 'never' assume[] lightly that Congress has derogated state regulation.'"  Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 341 (4th Cir. 2007) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987); N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995)).  The relevant provision regarding preemption under ERISA states that "the provisions of [ERISA] shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan."  Id.  (quoting 29 U.S.C.

5

§ 1144(a)) (emphasis added).  The scope of ERISA's preemption provision is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."  Id. (quoting Pilot Life, 481 U.S. at 46).  "A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Id. (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983)).  The Supreme Court has repeatedly emphasized that ERISA's preemption provision is not limited "to state laws specifically designed to affect employee benefit plans."  Id. (quoting Pilot Life, 481 U.S. at 47–48).  "Nor may parties avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims."  Id.  "Furthermore, ERISA's preemptive scope is not diminished simply because a finding of preemption will leave a gap in the relief available to a plaintiff."  Id.

The scope of ERISA's "relate to" preemption provision is not without bounds, however.  The Supreme Court has stated that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere."  Travelers, 514 U.S. at 655.  Thus, the Supreme Court directs courts to go beyond the "unhelpful text" and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  Id.  In light of ERISA's objectives as set forth in 29 U.S.C. § 1001(b), "the Supreme Court has explained that Congress intended ERISA to preempt at least three categories of state law:  (1) laws that 'mandate[ ] employee benefit structures or their administration'; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) 'laws providing alternate enforcement mechanisms' for employees to obtain ERISA plan

6

benefits. Wilmington, 496 F.3d at 342 (quoting Travelers, 514 U.S. at 658–59; Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1469 (4th Cir. 1996)). "Indeed, the Supreme Court has explained that ERISA does not preempt 'lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan' even though such claims 'obviously affect[ ] and involv[e] ERISA plans and their trustees.'" Great-W. Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp., 523 F.3d 266, 271 (4th Cir. 2008) (quoting Mackey v. Lanier Collection Agency & Svc., Inc., 486 U.S. 825, 833 (1988)).

All of the Rogers' state law claims restate and incorporate by reference all of the allegations from the ERISA claims. While the Rogers also set forth some independent factual allegations to support each state law claim, the allegations completely restate the general allegations underlying the Rogers' ERISA claims. The state law claims are based on the Group Plan entered into between Tom and United and United's refusal to provide coverage for Tom's inpatient rehabilitation facility treatment. The Rogers' breach of the implied covenant of good faith and fair dealing claim even states that "[i]n the event that this [c]ourt determines that the Group Plan is not governed by ERISA, [the Rogers] request that this [c]ourt find that United breached the Group Plan terms in bad faith." Compl. ¶ 53.

The Rogers do not dispute that their state law claims are based on the same factual circumstances as their ERISA claims. Hr'g Tr. 14:23–15:2 ("The Court: Do you agree that your state law causes of action relate to the ERISA claim? . . . Mr. Hahn: Yes, Your, Honor. I think I have to honestly say that it does relate . . . ."). However, the Rogers argue that United has "in essence waived [its] rights to the defense afforded them

by ERISA preemption of state law claims by failing themselves to abide by the provisions set forth in 29 U.S.C. § 1133 regarding proper notice and review of denied claims and in failing to act" in the interests of the Group Plan participants. Pls.' Resp. 10. The Rogers further argue that there has been a recent shift in the Supreme Court's and Fourth Circuit's approaches to other equitable remedies and maintain that Congress contemplated "such circumstances for additional recovery outside of those provided by ERISA . . . when it stated that '[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan.'" Id. (quoting 29 U.S.C. § 1132(a)(3)(B)).

The Rogers do not cite any authority for their contention that the state law claims are not preempted by ERISA's preemption provision simply because United failed to comply with ERISA's notice and review requirements. Rather, the Rogers only cite a concurring opinion in which Justice Ginsburg observed that "[b]ecause the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of the 'equitable relief' allowable under § 502(a)(3), a 'regulatory vacuum' exists: '[V]irtually all state law remedies are preempted but very few federal substitutes are provided.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 222 (2004) (Ginburg, J., concurring) (quoting DeFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 456, 457 (3rd Cir. 2003)). The Rogers cite a couple cases for their proposition that the equitable relief sought in their state claims—injunctive relief—should be granted. See CIGNA Corp. v. Amara, 562 U.S. 421, 131 S. Ct. 1866 (2011); Moon v. BWX Techs., Inc., 498 F. App'x 268, 275 (4th Cir. 2012); McCravy v. Metro. Life Ins. Co., 690 F.3d 176 (4th Cir. 2012).

However, none of the courts in the aforementioned cases granted equitable relief by way of state law claims, but rather only under ERISA's civil enforcement provisions, already asserted under the Rogers' second cause of action. See Amara, 131 S. Ct. at 1879–82 ("We have interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity.") (internal quotation marks omitted); McCravy, 690 F.3d at 181 ("[T]he portion of Amara in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)."); Moon, 498 F. App'x at 276 (recognizing that "remedies beyond mere premium refunds—including the surcharge and equitable estoppel remedies . . . are indeed available to ERISA plaintiffs suing fiduciaries under Section 1132(a)(3)" and remanding to district court for further consideration of equitable estoppel and breach of fiduciary duty claims in light of McCravy and Amara). These cases do not provide that the appropriate method by which the equitable relief may be obtained is through state law claims.

Further, any equitable relief the Rogers seek is recoverable under existing ERISA provisions and may be fashioned by the court exercising its equitable powers in conjunction with Section 1132(a)(3). See Amara, 131 S. Ct. at 1978 (stating that "'appropriate equitable relief' in § 502(a)(3) [ ] refer[s] to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity) 'were typically available in equity'"). Because the Rogers' state law causes of action clearly relate to the

Group Plan itself and the ERISA claims, the court holds that the Rogers' state law claims are preempted by ERISA.

Therefore, the court grants United's motion to dismiss as it pertains to the Rogers' fourth, fifth, and sixth causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.

### B.     Breach of Fiduciary Duty Pursuant to 29 U.S.C. § 1109

United next argues that the court should dismiss the Rogers' third cause of action because the Rogers seek only individual recovery instead of recovery for the plan as a whole. Defs.' Mot. 6. In response, the Rogers argue that the claim is sufficient under 29 U.S.C. § 1109 because the allegations indicate "an overarching tendency by [d]efendants to act in their own financial interest by denying legitimate medical claims—rather than acting in the best interests of plan participants and beneficiaries—and then attempting to conceal such activity by failing to produce documentation related to said denials in an effort to impede plan participants and beneficiaries from seeking administrative remedies under the plan." Pls.' Resp. 8. The Rogers failed to cite a single case in support of their argument.

> Section 1109(a), ERISA's fiduciary liability provision, provides in full:
>
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good <u>to such plan</u> any losses <u>to the plan</u> resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (emphasis added). In <u>Coyne & Delany Co. v. Blue Cross and Blue Shield</u>, 102 F.3d 712, 714 (4th Cir. 1996), the Fourth Circuit Court of Appeals held that "[t]he Supreme Court in [<u>Mass. Mut. Life Ins. Co. v.</u>] <u>Russell</u> clearly held that any recovery under [ERISA] section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." <u>See also</u> <u>Russell</u>, 473 U.S. at 140–44 (noting that ERISA provides a cause of action for breach of fiduciary duty in order to address the concern of "misuse and mismanagement of plan assets by plan administrators"). "As such, according to the terms of ERISA and the governing law of the Fourth Circuit, a plaintiff may only obtain money damages for the benefit of the plan under ERISA §§ 409(a) and 502(a)(2) if he alleges and proves a <u>loss to the plan itself</u>." <u>Register v. Cameron & Barkley Co.</u>, 467 F. Supp. 2d 519, 528 (D.S.C. 2006) (emphasis added); <u>see also</u> <u>Meyer v. Berkshire Life Ins. Co.</u>, 250 F. Supp. 2d 544 (D. Md. 2003), <u>aff'd</u>, 372 F.3d 261 (4th Cir. 2004) ("While section 1109 limits claims to those which inure to the benefit of the plan as a whole rather than to individual beneficiaries, losses to the plan in § 1109 [should be construed] broadly in order to further the remedial purposes of ERISA.") (internal quotation marks omitted).

The Rogers allege that United "breached its fiduciary duty to [p]laintiffs by failing to act in Mr. Rogers'[s] best interest, and instead, acted solely in its own financial interest to the detriment of [p]laintiffs." Compl. ¶ 43 (emphasis added). The Rogers further allege that "United deprived [p]laintiff of the benefits to which he is eligible under the Group Plan and knowingly concealed its self-serving reasons for doing so . . . ." <u>Id.</u> ¶ 44 (emphasis added). The Rogers allege that "[a]s a result of United's breach of its fiduciary duty, [p]laintiffs incurred damages including, but not limited to, medical bills

that they were required to pay, despite the fact that the claims should have been covered under the terms of the Group Plan." Id. ¶ 46 (emphasis added).  The complaint does not allege that United breached its duties to the Group Plan's beneficiaries or participants but rather only its duties to Tom.  Further, the Rogers seek recovery of Tom's medical bills, a remedy which would benefit only the Rogers and not the Group Plan or its beneficiaries as a whole.  Although the Rogers also seek injunctive relief, a remedy often provided to a plan as a whole, the Rogers ask the court to enjoin "United from denying its duties and obligations to [p]laintiff [Tom] . . . and requiring United to take all actions to comply with its duties and obligations under the Group Plan" and to enjoin "any future act or practice of United that violates the terms of the Group Plan as to [p]laintiffs." Id. ¶ 59(e) (emphasis added).

The Rogers have failed to properly state a cause of action for monetary relief on behalf of the Group Plan, but rather only seek individual recovery.   Their claims are for benefits, not for a breach of fiduciary duties under Section 1109.  See, e.g., Taylor v. Oak Forest Health & Rehab., LLC, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013) ("A plaintiff cannot sue for individual damages under § 1109 or § 1132(a)(2) because the plain language of these provisions indicate that they only allow recovery for losses to the plan itself and do not provide a means of relief for individual beneficiaries."); Barnett v. Perry, 2011 WL 5825987, at *5 (D. Md. Nov. 16, 2011) (finding that plaintiffs failed to state a proper breach of fiduciary duty claim under Section 1109, evidenced by the "remedies [sought]—retroactive reinstatement to the Plan and reimbursement for their costs—[that] would benefit only the [plaintiffs], not the Plan's beneficiaries as a whole").

Therefore, the court grants United's motion to dismiss the Rogers' breach of fiduciary duty claim in their third cause of action.

### C.     Exhaustion

United next argues that Tom has neither exhausted nor alleged that he has exhausted his administrative remedies as required under ERISA. Defs.' Mot. 6–7. Therefore, United argues that the Rogers' first and second causes of action must be dismissed. In response, the Rogers do not dispute that Tom failed to exhaust his administrative remedies but rather argue that (1) there is an exception to the exhaustion requirement for breach of fiduciary duty claims,[2] and (2) administrative exhaustion may be excused when such exhaustion would be futile. Pls.' Resp. 5.

"ERISA does not contain an explicit exhaustion provision." Makar v. Health Care Corp. of Mid-Atl. (CareFirst), 872 F.2d 80, 82 (4th Cir. 1989). Nevertheless, "[a]n ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005) (exhaustion of plan's remedies is "a prerequisite to an ERISA action for denial of benefits" (citing Makar, 872 F.2d at 82)). "This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." Makar, 872 F.2d at 82.

ERISA requires benefit plans covered by the Act to provide internal dispute resolution procedures for participants whose claims for benefits have been denied. Id. at

---

[2]     "To the extent that [the Rogers'] claim is a true-breach-of-fiduciary-duty claim pursuant to subsection 502(a)(3), administrative exhaustion is not required." Hall v. Tyco Int'l Ltd., 223 F.R.D. 219, 238 (M.D.N.C. 2004). However, as outlined above, the Rogers have failed to properly allege a breach of fiduciary duty claim because they only seek individual damages rather than recovery for the Group Plan as a whole. Therefore, the Rogers' futility argument pertaining to the breach of fiduciary duty claim is irrelevant.

83 (citing 29 U.S.C. § 1133). Employee benefit plans must also provide "adequate, written notice of the specific reasons for such a denial and must afford participants a reasonable opportunity for a 'full and fair review' of the decision denying the claim." Id. "Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Id.

However, there are two exceptions to the exhaustion requirement recognized within the Fourth Circuit. Vogel v. Indep. Fed. Sav. Bank, 728 F. Supp. 1210, 1223 (D. Md. 1990).

> First, if it appears that it would be futile for a plaintiff to have pressed his claim through the plan's established remedies, then a failure to exhaust may be excused. Dameron v. Sinai Hospital of Baltimore, 626 F. Supp. 1012, 1015 (D. Md. 1986), aff'd in relevant part, 815 F.2d 975 (4th Cir. 1987). Second, if it appears that the plaintiffs would have been denied "meaningful access" to established internal procedures, then, again, a failure to exhaust may be excused. [ ] Watson v. Fuller Brush Co., 570 F. Supp. 1299 (W.D. Mich. 1983); Makar, 872 F.2d at 83.

Id. "The question of whether exhaustion of administrative remedies is required in a particular ERISA case is a matter within the discretion of the trial court." George v. Duke Energy Ret. Cash Balance Plan, 560 F. Supp. 2d 444, 469 (D.S.C. 2008) (citing Vogel, 728 F. Supp. at 1223).

### 1. Futility

An exception to the exhaustion requirement exists when "there is clear and positive evidence that the [administrative] remedies are futile or useless." Kunda v. C.R. Bard., Inc, 671 F.3d 464, 472 (4th Cir. 2011) (quotations omitted). "The futility

exception . . . is quite restricted, and has been applied only when resort to administrative remedies is 'clearly useless.'" Kern v. Verizon Commc'ns, Inc., 381 F. Supp .2d 532, 537 (N.D.W. Va. 2005) (quoting Comm. Workers of Am. v. AT&T, 40 F.3d 426, 433 (D.C. Cir. 1994)). Courts require that a plaintiff make a "clear and positive" showing that any pursuit of administrative remedies would be futile. Makar, 872 F.2d at 83.

  The Rogers argue that because United failed to respond to Tom's multiple requests for documents and information, any attempts to exhaust his administrative remedies would have been futile. In the complaint, the Rogers allege that Tom first sent United a written request to obtain documents and information on July 22, 2014, but that United failed to respond to the request. Compl. ¶¶ 24–25. The Rogers further allege that Tom's attorney sent a second request on September 25, 2015, again seeking the relevant documents. Id. ¶ 25. According to the Rogers, United sent a fax on September 29, 2014 that stated that Tom's second request did not "include an ORS/Secondary barcode sheet, a detail neither explained in the cryptic fax nor required pursuant to the June 10, 2014 letter setting forth the necessary steps for requesting details of the denial of coverage." Id. ¶ 26. The Rogers further allege that "[a]s a result of United's refusal to cooperate with [Tom's] inquiry regarding the denial of his claim and provide the critical information concerning United's denial of said claim, it became evident that [Tom's] only hope of resolving the issue at hand was to appeal to this Court for a legal remedy." Id. ¶ 27. The Rogers contend that "no meaningful appeal could have been made without said documents and information and that [Tom's] repeated attempts to obtain said documents and information from [United] did constitute the initiation of the appeal process." Pls.' Resp. 6 (emphasis in original).

15

United does not dispute that it failed to respond to Tom's July 22, 2014 request. Further, United does not explain the apparent insufficiencies in Tom's September 25, 2014 request to justify its failure to send the relevant documents. Rather, United argues that the Rogers failed to sufficiently allege futility in their complaint and first raised the futility argument in the response in opposition to United's motion to dismiss. United further argues that the allegations do not establish that Tom initiated an appeals process but "merely demonstrate [Tom's] request for information about United's denial." Defs.' Reply 2. United argues that Tom's failure to "make a clear and positive showing of futility, or even mention futility, in [the] [c]omplaint should result in the dismissal" of the Rogers' first and second causes of action. Id. (citing Day v. Eastman Chem. Co., 2013 WL 5657678, *2 (D.S.C. Oct. 15, 2013) (dismissing claim for failure to exhaust at the summary judgment stage, finding that the plaintiff never appealed the denial of benefits).

Other courts have found that a failure to respond to document requests sufficiently establishes futility. See, e.g., Nessell v. Crown Life Ins. Co., 92 F. Supp. 2d 523, 529 (E.D. Va. 2000) (holding that any further attempt to appeal would be futile where defendant (1) refused to turn over requested copies of plan documents and medical reports and (2) told plaintiff that its decision was "final and irrevocable" and would not consider any appeals); O'Bryhim v. Reliance Standard Life Ins. Co., 997 F. Supp. 728, 731 (E.D. Va. 1998) (establishing futility by demonstrating that the defendant insurance company failed to respond to three prior appeals); Vogel, 728 F. Supp. at 1223–24 ("Given the alleged conduct of all defendants in this case, there was no reason for the [plaintiff] to have believed that any defendant would change its position. Hence, attempted exhaustion would be futile."); cf. Gruber v. Unum Life Ins. Co. of Am., 195 F.

Supp. 2d 711, 717 (D. Md. 2002) ("Plaintiff has shown that her earlier informal attempts to change her classification had been unsuccessful and probably frustrating, but has offered no evidence that a formal review process would not have yielded a different result.").

It is clear that Tom never filed a formal appeal of United's decision to deny coverage.  In the letter notifying Tom of its denial, United gave Tom the opportunity to "request the information [United] reviewed to make this coverage decision free-of-charge . . . including reasonable access to an copies of all documents, records, health benefit plan provisions, internal rules," etc.  Compl. Ex. B, 2.  Alternatively, the letter stated that Tom "may request an appeal."  Id.  Tom sent the first request for documents on July 22, 2014 and the second request on September 25, 2014.  United failed to respond to Tom's first request entirely.  United responded to Tom's second request on September 29, 2014 with a fax devoid of any information regarding the request or any documents relating to his claim.  Id. Ex. E.  Undoubtedly, Tom would need the requested documents to file a meaningful appeal.  After more than two months, Tom still had not received a response.[3]

Further, failure to exhaust administrative remedies under ERISA is an affirmative defense.  Taylor, 2013 WL 4505386, at *3.  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, and rarely will this involve assessing the sufficiency of defenses."  Id.  "The burden of establishing an affirmative defense rests with the

---

[3]     Although United cites Day in support of its contention that the Rogers failed to adequately allege futility, Day is distinguishable because the plaintiff in Day made two coverage requests, but did not send anything after he received notification of the denial.  Day, 2013 WL 5657678, at *1.  Tom sent two document requests after United denied his two coverage requests.  Further, Day involved a motion for summary judgment, not a motion to dismiss.  Id.

defendant, and 'a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense.'" Id. (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc)).  There are "'relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint.'" Id. (quoting Goodman, 494 F.3d at 464).  At this stage in the litigation, the Rogers have presented a plausible argument supported by factual allegations that the futility exception to the exhaustion requirement should apply under these circumstances.

Therefore, the court holds that any further attempt to appeal United's refusal of coverage would have been futile under the circumstances.  Because it is not apparent from the face of the complaint that the affirmative defense of failure to exhaust applies, the court denies United's motion to dismiss for failure to exhaust as it pertains to Rogers's first and second causes of action.

### D.     Standing

Lastly, United argues that Ms. Rogers does not have constitutional standing to pursue the claims.  Defs.' Mot. 8–9.  In response, the Rogers argue that Ms. Rogers has established standing because she was a beneficiary under the plan, "suffered injuries through the payment of medical bills out of marital property," and "emotional damages that resulted from [United's] refusal to respond to inquiries regarding the denial of medically necessary treatment for her critically-ill spouse."  Pls.' Resp. 11–12.

During the September 17, 2015 hearing, the Rogers' counsel conceded that if the court were to dismiss the state law claims, Ms. Rogers would no longer have standing to pursue the ERISA claims.  Hr'g Tr. 16:2–6.  Therefore, it is unnecessary for the court to address the merits of United's standing arguments.

As such, the court grants United's motion to dismiss as it pertains to Ms. Rogers's claims.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** United's motion to dismiss without prejudice.  Specifically, the court **GRANTS** United's motion as it pertains to all of Ms. Rogers's claims, as well as Tom's breach of fiduciary duty claim under 29 U.S.C. § 1109 and state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.   Further, the court **DENIES** United's motion to dismiss as it pertains to Tom's first and second causes of action for ERISA violations pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3).

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 26, 2015**
**Charleston, South Carolina**

19